**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

**ANDREW POLSKY, derivatively on behalf of MCAP HOLDINGS, LLC,**

**Plaintiff,**

**v.**

**MCAP HOLDINGS, LLC; FUSHEN CHANG; and DOES 1 through 25, inclusive,**

**Defendants.**

**Case No.: SACV 23-00225-CJC (ADSx)**

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISQUALIFY YASIN M. ALMADANI AND ALMADANI LAW FIRM [Dkt. 28]**

## I. INTRODUCTION

In this action, Plaintiff Andrew Polsky, derivatively on behalf of MCAP Holdings, LLC, brings claims for breach of fiduciary duty, fraud, removal of manager, and breach of the implied covenant of good faith and fair dealing against Defendant Fu-Shen "Max"

Chang and MCAP as a nominal defendant. (*See* Dkt. 13 [First Amended Complaint, hereinafter "FAC"].) Now before the Court is Polsky's motion to disqualify Yasin M. Almadani and his firm, Almadani Law, as counsel for Chang and MCAP. (*See* Dkt. 20 [Plaintiff's Motion to Disqualify Yasin M. Almadani and Almadani Law as Counsel for Defendants Mcap Holdings, LLC and Fusen (sic) Chang, hereinafter "Mot."].) For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.[1]

## II. BACKGROUND

As alleged in the operative complaint, Polsky and Chang formed MCAP, a Delaware limited liability company, in October 2013. (*See* FAC ¶ 6.) They formed MCAP as an immigration-linked investment firm that helps foreign nationals connect to qualified U.S.-based projects to obtain immigrant visas through the EB-5 investor visa program. (*See id.* ¶ 7.) Under the terms of the operating agreement, Chang is the sole managing member and holds an 80% membership interest, while Polsky is the president and holds a 20% interest. (*See id.* ¶¶ 8–10, 53.)

Chang's responsibilities included soliciting, vetting, and engaging foreign investors for business opportunities in federal visa programs. (*See id.* ¶ 14.) He also oversaw the drafting and preparing of private placement memorandums containing specific visa-related language, escrow agreements, loan documents, regional center agreements, economic job impact analysis reports, and business plans, among other things. (*See id.*)

[1] Having read and considered the papers that the parties presented, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing scheduled for July 31, 2023, is hereby vacated and removed from the calendar

Before MCAP's formulation, Chang told Polsky that he also was the sole owner of Corbus, LLC. (*See id.* ¶¶ 17–18.) Chang informed Polsky that Corbus's purpose was to pursue commercial real estate deals not involving visa opportunities for foreign investors and, therefore, to conduct business outside of the scope of MCAP's business. (*See id.*)

In January 2022, Chang told Polsky that he and Corbus were involved in litigation over a real estate dispute, which later resulted in a verdict awarding Corbus $3,738,586. (*See id.* ¶¶ 22, 24.) Upon further research, Polsky learned that Corbus was involved in real estate development projects related to the EB-5 visa program, which is a line of business similar to MCAP's business. (*See id.* ¶¶ 19–23.) Polsky then brought this suit, alleging that Chang violated his duties of loyalty and care to MCAP, fraudulently concealed and omitted material information from Polsky and MCAP, and breached the implied covenant of good faith and fair dealing in the company's operating agreement and further seeking removal of Chang as the managing member. (*See id.* ¶¶ 30–61.)

## III. DISCUSSION

A "district court has primary responsibility for controlling the conduct of attorneys practicing before it." *Paul E. Iacono Structural Eng'r, Inc. v. Humphrey*, 722 F.2d 435, 438 (9th Cir. 1983). Its "authority to disqualify an attorney derives from the power inherent in every court [t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons . . . connected with a judicial proceeding before it." *In re Spikes*, 837 F. App'x 469, 471 (9th Cir. 2020) (citation omitted). The U.S. District Court for the Central District of California has adopted "the standards of professional conduct required of members of the State Bar of California," which are "contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and the decisions of any court applicable thereto." C.D. Cal. L.R. 83–3.1.2. Attorneys must "be

familiar with and comply with the standards," and a violation can lead to disqualification, *see In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).

"A motion to disqualify a party's counsel may implicate several important interests," so courts "must examine these motions carefully to ensure that literalism does not deny the parties substantial justice." *People ex rel. Dep't of Corr. v. SpeeDee Oil Change Sys., Inc.*, 980 P.2d 371, 377 (Cal. 1999). Those interests include "a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion." *Id.* "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar," and "[t]he important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *Id.* at 378. The decision whether to disqualify counsel is committed to the sound discretion of the court. *See Tr. Corp. of Mont. v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983). "Because of th[e] potential for abuse," however, "disqualification motions should be subjected to 'particularly strict judicial scrutiny.'" *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (citation omitted).

Polsky seeks to disqualify Almadani and his firm from representing MCAP, a nominal defendant, and Chang under the California Rules of Professional Conduct. (*See* Mot. at 2, 7.) In short, Almadani and his firm cannot represent MCAP but may continue to represent Chang in this suit.

**A. Concurrent Representation of MCAP and Chang**

California Rule of Professional Conduct 1.7 "prohibits the concurrent representation of clients in certain circumstances without the informed written consent of

each client." *Gong v. RFG Oil, Inc.*, 82 Cal. Rptr. 3d 416, 420 (Cal. Ct. App. 2008). The rule provides, in relevant part, that "[a] lawyer shall not, without informed written consent from each client . . . , represent a client if the representation is directly adverse to another client in the same or a separate matter." Cal. Rules of Pro. Conduct r. 1.7(a) (footnotes omitted). "A directly adverse conflict . . . can arise in a number of ways." *Id.* r. 1.7 cmt. 1. These include, "for example, when . . . a lawyer accepts representation of more than one client in a matter in which the interests of the clients actually conflict" or when "a lawyer accepts representation of a person in a matter in which an opposing party is a client of the lawyer or the lawyer's law firm." *Id.* (footnote omitted).

Further, even when a client consents, "[r]epresentation is permitted . . . only if" three additional conditions are satisfied:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law; and
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

*Id.* r. 1.7(d) (footnote omitted).

"The primary value at stake in cases of simultaneous or dual representation is the attorney's duty—and the client's legitimate expectation—of loyalty, rather than confidentiality." *Flatt v. Superior Ct.*, 885 P.2d 950, 955 (Cal. 1994) (emphasis omitted). "The reason for such a rule is evident, even (or perhaps especially) to the nonattorney." *Id.* "A client who learns that his or her lawyer is also representing a litigation adversary, even with respect to a matter wholly unrelated . . . , cannot long be expected to sustain the

level of confidence and trust in counsel that is one of the foundations of the professional relationship." *Id.*

"[I]n a derivative suit, the organization named as a defendant is actually a plaintiff and case law forbids dual representation in a derivative suit alleging fraud by the principals, because the principals and the organization have adverse, conflicting interests." *Gong*, 82 Cal. Rptr. 3d at 420–21. Similarly, "[i]n a shareholder derivative action alleging breach of fiduciary duty, the corporation on whose behalf the suit is brought and the alleged wrongdoer are also in direct conflict and disqualification is required." *Sketchy Studios, LLC v. Frame Rates, Inc.*, No. CV 15-2023, 2016 WL 11746532, at *5 (C.D. Cal. Oct. 11, 2016). This principle applies to entities other than corporations, such as limited liability companies. *See Blue Water Sunset, LLC v. Markowitz*, 122 Cal. Rptr. 3d 641, 649–50 (Cal. Ct. App. 2011).

Here, there is some indication that Almadani and his firm violated the proscription on concurrent representation. Almadani has attested several times that "[he] is counsel of record in th[is] matter for Defendant Fu-Shen Chang and Nominal Defendant MCAP Holdings, LLC." (Dkt. 1-1 [Declaration of Yasin M. Almadani in Support of Notice of Removal] ¶ 1; *see also* Dkt. 4-1 [Declaration of Yasin M. Almadani in Support of Unopposed Application for Extension of Time to Respond to Complaint] ¶ 1; Dkt. 10-2 [Declaration of Yasin M. Almadani in Support of Motion to Dismiss Complaint] ¶ 1; Dkt. 16-1 [Declaration of Yasin M. Almadani in Support of Unopposed Application for Extension of Time to Respond to First Amended Complaint] ¶ 1; Dkt. 18-2 [Declaration of Yasin M. Almadani in Support of Motion to Dismiss First Amended Complaint] ¶ 1.)

After Polsky's counsel raised with Almadani concerns about concurrent representation, Almadani filed a notice clarifying his representation in this action. He stated that he "serves as counsel for *Mr. Chang* (who is the real party in interest), *not* for

MCAP, which is merely a nominal or formal defendant that will necessarily be dismissed if the suit against Mr. Chang is dismissed." (Dkt. 22 [Notice of Clarification of Representation] at 2.) "To the extent the 'nominal' and 'real' status of the two defendants created any confusion about representation vis-à-vis the motion to dismiss," he "clarif[ied] that [he] represents Mr. Chang" and "has no representation agreement with MCAP, has never had a representation agreement with MCAP, and does not represent MCAP." (*Id.*) Almadani's declaration filed with the opposition to the motion to disqualify attests to the same. (*See* Dkt. 30-2 [Declaration of Yasin M. Almadani in Support of Reply in Support of Defendant Fu-Shen Chang's Opposition to Plaintiff's Motion to Disqualify Yasin M. Almadani and Almadani Law as Counsel for Defendant Fu-Shen Chang] ¶¶ 12–14.)

Because Almadani does not seek to represent MCAP but is nonetheless currently listed by the Clerk of the Court as counsel for MCAP, out of an abundance of caution, the Court will deem Almadani and his firm disqualified from representing MCAP.

**B. Successive Representation of MCAP and Chang**

"California Rule of Professional Conduct 1.9 addresses the ongoing duty of confidentiality and loyalty that an attorney owes . . . former clients." *Sierra v. Costco Wholesale Corp.*, 630 F. Supp. 3d 1199, 1205 (N.D. Cal. 2022). The rule provides, in relevant part, that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent." Cal. Rules of Pro. Conduct r. 1.9(a) (footnotes omitted).

A "court must first identify where the attorney's former representation placed the attorney with respect to the prior client." *Jessen v. Hartford Cas. Ins. Co.*, 3 Cal. Rptr. 3d 877, 886 (Cal. Ct. App. 2003). "If the court determines that the placement was direct and personal, this facet . . . is settled as a matter of law in favor of disqualification and the only remaining question is whether there is a connection between the two successive representations . . . ." *Id.* "However, if the court determines the former attorney was not placed in a direct, personal relationship with the former client, the court must assess whether the attorney was positioned during the first representation so as to make it likely the attorney acquired confidential information relevant to the current representation . . . ." *Id.*

Representations are "'substantially related' when the evidence . . . supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." *Id.* at 887–88; *see also* Cal. Rules of Pro. Conduct r. 1.9 cmt. 3. "[T]his materiality requirement is not satisfied by mere relevance." *Victaulic Co. v. Am. Home Assurance Co.*, 295 Cal. Rptr. 3d 738, 759 (Cal. Ct. App. 2022). "The presumption that former counsel possesses confidential information is triggered only if there is a substantial risk that confidential information would be used in the current representation, which occurs where it is 'reasonable to conclude' that the information 'would *materially* advance the [present] client's position.'" *Id.* (alteration in original) (citation omitted). Information from the first representation "must be found to be directly at issue in, or have some critical importance to, the second representation." *Farris v. Fireman's Fund Ins. Co.*, 14 Cal. Rptr. 3d 618, 623 (Cal. Ct. App. 2006).

Polsky argues that Almadani and his firm must be disqualified from representing Chang because MCAP previously consulted with Almadani regarding potential representation in a different matter and is the real party in interest on the plaintiff's side of this case and, therefore, directly adverse to Chang. Polsky says that, upon the recommendation of Chang, MCAP consulted with Almadani about potentially representing MCAP in litigation against the borrowers of one of MCAP's indirect subsidiaries regarding the subsidiary's investment. (*See id.* at 3–4; Dkt. 34 [Plaintiff's Reply in Support of Motion to Disqualify Yasin M. Almadani and Almadani Law as Counsel for Defendants MCAP Holdings, LLC and Fushen (sic) Chang] 3–5.) Chang contends that the consultation was not about potential representation of MCAP but of the indirect subsidiary itself, a limited liability company separate and apart from MCAP. (*See* Dkt. 30 [Defendant Fu-Shen Chang's Opposition to Plaintiff's Motion to Disqualify Yasin M. Almadani and Almadani Law as Counsel for Defendant Fu- Shen Chang] at 9.)

The parties' dispute over which entity consulted Almadani about potential representation is ultimately neither here nor there, for there is no indication of a substantial relationship between the matters. On this issue, Polsky says only that "[t]he confidential information shared with Mr. Almadani regarding [sic] includes information about MCAP's (a) business objectives, (b) litigation objectives; (c) investment involving [the subsidiary]; (d) investors, (e) company history, (f) internal operations; and (g) investment structures." (Mot. at 14.) But "the attorney's acquisition during the first representation of general information," such as "the first client's 'overall structure and practices[,]' would not of itself require disqualification unless it were found to be '*material'* . . . . The same is true about information such as the first client's 'litigation philosophy' or 'key decision makers.'" *Farris*, 14 Cal. Rptr. 3d at 623 (emphasis added). Polsky has not explained how the information to which he vaguely alludes in his motion are "directly at issue in, or have some critical importance to," this case, *id.*, and at the level of generality presented, the Court cannot see how it could be. It is the movant's

"burden to show . . . the existence of a substantial relationship between the former and current representations," *In re Charlisse C.*, 194 P.3d 330, 343 n.11 (Cal. 2008), and Polsky has failed to meet his burden.

**C. Attorney as Necessary Witness**

California Rule of Professional Conduct provides that "[a] lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless" one of three conditions is satisfied:

> (1) the lawyer's testimony relates to an uncontested issue or matter;
>
> (2) the lawyer's testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) the lawyer has obtained informed written consent from the client.

Cal. Rules of Pro. Conduct r. 3.7(a).

"In exercising its discretion to disqualify counsel under" this rule, known as "the advocate-witness rule, a court must consider" several factors:

> (1) "whether counsel's testimony is, in fact, genuinely needed"; (2) "the possibility [opposing] counsel is using the motion to disqualify for purely tactical reasons"; and (3) "the combined effects of the strong interest parties have in representation by counsel of their choice, and in avoiding the duplicate expense and time-consuming effort involved in replacing counsel already familiar with the case."

*Doe v. Yim*, 269 Cal. Rptr. 3d 613, 621 (Cal. Ct. App. 2020) (alteration in original) (citation omitted). "In determining the necessity of counsel's testimony, the court should consider 'the significance of the matters to which [counsel] might testify, the weight [counsel's] testimony might have in resolving such matters, and the availability of other

witnesses or documentary evidence by which these matters may be independently established.'" *Smith, Smith & King v. Superior Ct.*, 70 Cal. Rptr. 2d 507, 512 (Cal. Ct. App. 1997) (citation omitted).

Disqualification of Almadani under the advocate-witness rule is not warranted. Polsky asserts that he "will be calling Mr. Almadani as a witness at trial given his prosecution of the Corbus Litigation." (Mot. at 18.) "Almadani's expected testimony will directly relate to the timing, extent, and nature of his representation of Corbrus, the third-party through which this action alleges Chang used to usurp MCAP's corporate opportunities and engage in self-dealing." *Id.* But Polsky does not explain why the testimony of specifically Almadani on topics not barred by privilege rules is needed or why other sources of evidence are insufficient. This lack of an explanation also raises the specter that Polsky may be trying to use the rule for tactical reasons. And disqualifying Almadani and his firm would, of course, prejudice Chang in denying him the counsel of his choice and induce unnecessary duplication of efforts in new counsel getting up to speed on this matter as well as delay of these proceedings. Thus, based on Polsky's lack of a showing, disqualification is not appropriate.

//

//

//

//

//

//

//

//

//

//

//

## IV. CONCLUSION

The motion to disqualify Almadani and Almadani Law is **GRANTED IN PART** and **DENIED IN PART**. Counsel shall not represent MCAP Holdings, LLC, but may continue to represent Fu-Shen "Max" Chang.

DATED: July 27, 2023

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE